**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brandon Webb,<br><br>        Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>        Defendant. | No. CV-21-08027-PCT-MTL<br><br>**ORDER** |

Pending before the Court is Plaintiff Brandon Webb's Motion for Summary Judgment (Doc. 17) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross Motion for Summary Judgment (Doc. 19). For the reasons that follow, Defendant's Cross Motion is granted and Plaintiff's Motion is denied.

**I.     BACKGROUND**

    **A.     The Settlement Act**

Prior to 1974, a parcel of land in northeastern Arizona, known as the "Joint Use Area" was occupied by both the Navajo and Hopi Nations. *Healing v. Jones*, 210 F. Supp. 125, 132 (D. Ariz. 1962), *aff'd*, 373 U.S. 758 (1963). In an attempt to resolve conflict between the tribes, Congress passed the Navajo-Hopi Settlement Act (the "Settlement Act") in 1974, which authorized the District Court of Arizona to divide the land into the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716 (1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir.

1999). The Settlement Act also created the ONHIR[*] to disburse benefits funds and to assist tribal members relocating to the other side of the partition. *Bedoni v. Navajo–Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989). To be eligible for benefits under the Settlement Act, a Navajo applicant must prove that he or she (1) was a legal resident of the HPL as of December 22, 1974 and (2) was the head of household at that time. *Laughter v. Office of Navajo & Hopi Indian Relocation*, CV–16–08196–PCT–DLR, 2017 WL 2806841, at *1 (D. Ariz. June 29, 2017). The applicant bears the burden of proving legal residence and head of household status. *See id.* (citing 25 C.F.R. § 700.147 (1986)).

### B. Factual and Procedural History

Plaintiff filed on behalf of the estate of his deceased mother, Laura Manygoats. (Doc. 1 at 1.) Laura was an enrolled member of the Navajo Nation. (Doc. 10, Administrative Record ("AR") at 34.) Laura was born November 1, 1964 and was raised near Sand Springs in the Coalmine Chapter area on the HPL. (AR 34, 50, 75.) Her parents maintained two seasonal camps, one of which was partitioned to the Hopi Indians and the other was partitioned to the Navajo Nation. (AR 50.) Laura graduated from high school at the age of twenty. (AR 185.) She continued to live at home on the HPL after graduating from high school and wove Navajo rugs for income. (AR 153, 160.) In 1985, Laura and her sister, Nora, began attending the Arizona Academy of Medical and Dental Assistants ("Academy") where they received financial aid totaling to $5,000 for tuition and $5,000 for living expenses. (AR 151–55, 169.) They received bi-weekly checks of $450 from the Academy through the duration of their attendance. (AR 180.) In 1986, the family began to move from the HPL to their second seasonal camp on the NPL. (AR 88–89, 98, 198–200.)

In May 2010, Laura applied for relocation benefits under the Settlement Act. (AR 116.) Two and a half years later, ONHIR denied Laura's application because she was not the "head of household" when she moved off of the HPL land. (*Id.*) Laura appealed. (AR 122, 124, 145.)

---

[*] The predecessor to the ONHIR was the Navajo-Hopi Indian Relocation Commission, or NHIRC. *See* 25 U.S.C. §§ 640d–11, 640d–12, 640d–13, 640d–14.

In September 2014, an Independent Hearing Officer ("IHO") held a hearing in Laura's case. (AR 145.) After the parties submitted post-hearing briefs, the IHO issued a written decision denying Laura's appeal. (Doc. 20 at ¶ 33, AR 49, 52.) The following month, ONHIR took final agency action on Laura's application and concluded the administrative review process. (AR 408.) Laura then timely filed a Complaint in this Court, seeking judicial review of the ONHIR's decision. (Doc. 1.)

## II. LEGAL STANDARD

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under the APA, the Court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. § 706(2)(A), (E) (1982); *Walker v. Navajo–Hopi Indian Relocation Comm'n*, 728 F.2d 1276, 1278 (9th Cir. 1984)). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). When conducting "judicial review pursuant to the APA, 'summary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did.'" *O'Daniel v. Office of Navajo & Hopi Indian Relocation*, No. 07-354-PCT-MHM, 2008 WL 4277899, at *3 (D. Ariz. Sept. 18, 2008) (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985)).

Under this standard, the Court applies a "narrow" and highly deferential standard of review:

> To make this finding the [C]ourt must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The [C]ourt is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).

In contrast to summary judgment in an original district court proceeding, the

function of the Court in a review of an administrative proceeding "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co.*, 753 F.2d at 769. "Where evidence is susceptible of more than one rational interpretation, it is the [IHO's] conclusion which must be upheld; and in reaching his findings, the [IHO] is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (1984) (citations omitted). Ultimately, the Court must affirm if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)).

**III.   ANALYSIS**

    **A.   Extra-Record Material**

Plaintiff attached fifteen exhibits to his motion for summary judgment and response (Ex. 1–15), some of which were not included in the administrative record. (Docs. 17-1, 17-2, 17-3, 17-4, and 24-1.) ONHIR objects to these extra-record documents because Plaintiff did not seek to supplement the record, "as required by Ninth Circuit law." (Doc. 19 at 6.)

"[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record consists of both the documents compiled and submitted by the agency, but also of "documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989). A district court may consider documents outside of the administrative record in four "narrowly construed" circumstances: when "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency." *Fence Creek Cattle Co. v. U.S. Forest*

*Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). While "an agency must follow its own precedent or else explain any deviation, . . . previous decisions only serve this purpose if they carry precedential value in the case at hand." *Stago v. Off. of Navajo & Hopi Indian Relocation*, 562 F. Supp. 3d 95, 102 (D. Ariz. 2021). Accordingly, the Court will consider only those exhibits if "they set forth ONHIR policy or if they involve facts indistinguishable from the instant case." *Id.*

Exhibits 3 through 9 are excerpts within the administrative record from prior ONHIR decisions. (Docs. 17-1, 17-2, and 17-3.) Plaintiff asserts these exhibits to be necessary to this Court's analysis as they have a "precedential effect," and urges the Court to ensure that those displaced under the Settlement Act are treated with fairness and consistency. (Doc. 23 at 10–11.) Here, the excerpts of the administrative record do not provide the Court with the facts necessary to determine what was before the IHO in each case. Further, the Court cannot conclude that "Plaintiff's hand-picked sample of cases represents a settled course of adjudication and a general policy by which [Defendant's] exercise of discretion will be governed . . . ." *Whitehair v. Off. of Navajo & Hopi Indian Relocation*, No. CV17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018) (internal quotation marks omitted). Thus, the Court will not consider these exhibits.

Exhibit 12 is the Office of the Inspector General's report on the "Status of the Office of Navajo and Hopi Indian Relocation's Appeals on Denied Eligibility Determination Cases." (Doc. 17-4 at 45–59, Ex. 12.) The report was published in September 2020. (*Id.* at 46.) Plaintiff's benefits were denied in January 2015, over five years prior. (AR 49–54.) Plaintiff does not attempt to argue that the IHO considered the report, nor that the report fits into any *Fence Creek* circumstances. (Doc. 23 at 9–11.) Thus, the Court will not consider Exhibit 12. *Stago*, 562 F. Supp. 3d at 103 (denying an exhibit where Plaintiff failed to argue for the application of *Fence Creek* or the IHO's consideration of the report).

Similarly, the Court will not consider Plaintiff's Exhibits 11, 13, 14 and 15 as there is no need to refer the Ninth Circuit's decision in *Shaw*, nor this Court's previous decisions in either *Herbert* or *Torpey*. The Court also finds no substantive value in Applicant

Brown's IHO's Finding of Fact, Conclusions of Law and Decision. (Docs. 17-4, 23-1, Ex. 11, 13, 14, 15.) However, the Court will consider Plaintiff's Exhibit 10. Plaintiff cites *In re Minnie Woodie* to highlight the ONHIR's policy on customary use policies. (Doc. 23 at 11–12.) The Ninth Circuit, along with various judges in this district, has held that "an applicant's use of land for traditional activities qualifies the applicant as a legal resident, which comes not from federal regulations but from the *Minnie Woodie* decision." *Stago*, 562 F. Supp. 3d at 102 (citing *Shaw v. Off. Of Navajo & Hopi Indian Relocation*, 860 Fed. App'x 493, 494–95 (9th Cir. 2021) (Bade, J., dissenting)). Given that the IHO was required to consider the *Minnie Woodie* decision and its respective holding, the Court finds Plaintiff's Exhibit 10 to be a part of the administrative record. *Id.*

In contrast, Plaintiff's Exhibit 1 was previously a part of the administrative record because it was included in Plaintiff's post-hearing memorandum. (AR 253–56.) Accordingly, it is part of this Court's review. To the extent that the remainder of Plaintiff's exhibits are not already a part of the administrative record, the Court will not consider them.

### B. Credibility Findings

Plaintiff also argues that the IHO's credibility findings were not supported by substantial evidence. (Doc. 17 at 9–14.) The IHO found Laura and Nora to be not credible but found Joseph Shelton, an ONHIR employee who reviewed the applicant's parents' relocation files, to be credible. (AR. 398–99.) "When the decision of an ALJ rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). Thus, "if an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision." *Id.* at 740 (citing *Varney v. Secretary of HHS*, 859 F.2d 1396 (9th Cir. 1988)). Nevertheless, an agency's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). The Ninth Circuit has

recognized that the IHO alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether an [witness]'s testimony has about it the ring of truth." *Sarvia–Quintanilla v. U.S. I.N.S.*, 767 F.2d 1387, 1395 (9th Cir. 1985).

The IHO found Laura and Nora's testimony about their enrollment at or financial assistance from the Academy, as well as their rug sales, noncredible because "there are no documents or records to show that either applicant or Nora Manygoats was enrolled in the school [or] . . . received financial assistance to attend the school." (AR 399.) Further, the IHO found that there are "no records to show that [Laura and Nora] earned any money from rug sales, there are no books of account or bookkeeping records in the record" and identified "incongruity [] and discrepancies in applicant's claims about financial assistance." (AR 399, 402.) In contrast, the IHO determined Joseph Shelton's testimony to be credible; he testified regarding his appraisal of the family's camp site and his review of the records. (AR 399, *see also* AR 214–25.) Despite finding that "Mr. Shelton has no direct knowledge whether the cornfield was planted after the appraisal photos were taken," the IHO found him to be credible based on his testimony regarding the history of the family's HPL camp site, as well as the cornfield and livestock there. (*Id.*) The Court finds that these reasons are specific and cogent, and therefore the IHO's credibility findings were supported by substantial evidence and entitled to deference by this Court. *See Begay v. Off. of Navajo & Hopi Indian Relocation,* 305 F. Supp. 3d 1040, 1050 (D. Ariz. 2018), *aff'd*, 770 F. App'x 801 (9th Cir. 2019).

Plaintiff also contends that the IHO's credibility findings were arbitrary and capricious because he failed to identify documentation regarding Laura's attendance of Academy and "he failed to credit Laura for any income received from the financial aid or income from her rugs in the 1980's." (Doc. 23 at 13.) Plaintiff further argues that the IHO failed to explain its deviation from prior agency decisions. (Doc. 17 at 14.) The Court is not persuaded by this argument. "The arbitrary and capricious standard is highly

deferential, [it] presum[es] the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). A reasonable basis underlies the IHO's findings here. This is exemplified in Plaintiff's inconsistent and contradictory arguments. (Doc. 23 at 3–5.) Nora testified that she and Laura attended the Academy where they were each supposed to receive $5,000 for living expenses. (*Id.* at 4.) Both received bi-weekly checks of $450 during the months of August, September, October, November, December, January, and February. (*Id.* at 5, AR 157–58.) Even considering Plaintiff's clarification that, "Nora's testimony was they started school at the end of August, were home for winter break and returned to school in February for a month or so until the school closed in March," the testimony still results in inconsistencies. (Doc. 23 at 5.) Nora's testimony made no mention of attendance in March, and she explicitly noted that she "receive[d] the same Financial Aid, the same check every two weeks, throughout her[] time going to school." (*Id.*, AR 158.) Moreover, Nora's testimony adds up to a payment of *over* $5,000, which is inconsistent with her prior testimony that she was supposed to receive $5,000 for living expenses. These inconsistencies form a reasonable basis for IHO's finding of noncredibility. *See Begay*, 305 F. Supp. 3d at 1050. Further, the ONHIR need not make the same credibility determination in two different cases. *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. CV-19-08212-PCT-SMB, 2020 WL 5632121, at *4 (D. Ariz. Sept. 21, 2020) (concluding that though "the agency [must] appl[y] the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence"). For these reasons, the Court concludes that the IHO's findings of Laura and Nora's lack of credibility were not arbitrary or capricious.

### C.     Head of Household

Plaintiff next challenges the IHO's conclusion that Laura Manygoats was not a self-supporting head of household prior to the July 7, 1986 deadline. (Doc. 17 at 5–6.) The IHO held that Laura and Nora's testimony regarding their income from weaving and financial

aid for school was not credible given a lack of documentation. (AR 400.)

To be considered a head of household, an applicant must show that she was a "single person who at the time his/her residence on land partitioned to the Tribe of which he/she is not a member actually maintained and supported him/herself[.]" 25 C.F.R. § 700.69(a)(2). The applicant bears the burden of proving his/her head of household status. *Id.* § 700.147(b). Moreover, to qualify, a Navajo individual must have become the Head of Household at either the time he or she moved to off the HPL, or by July 7, 1986. *Id.* § 700.69(c), § 700.147(e). Thus, to qualify for benefits, Plaintiff must prove that Laura was the self-supporting head of household prior to July 1986. The ONHIR's regulations do not set forth a specific dollar amount an applicant must have earned in order to qualify as self-supporting, but earnings of at least $1,300 per year create a *prima facie* showing of self-support. *Benally v. Off. of Navajo & Hopi Relocation*, No. 13-CV-8096-PCT-PGR, 2014 WL 523016, at *3 (D. Ariz. Feb. 10, 2014). To meet this burden, a court may require evidence or documentation of purported wages used to meet this threshold. *Id.*

The IHO did not err in finding that Plaintiff's testimony regarding her income was not credible given the lack of documentation prior to July 1986. Laura testified that she received bi-weekly checks in the amount of $450 for living expenses from Academy and income from weaving. (AR 191–92.) Laura explained that she wove approximately three to four rugs per month and sold each rug for cash in the amounts ranging from $300 to $450, depending upon its size and pattern. (AR 160–63, 187–88, 199–200.) But both of these alleged sources of income were undocumented. Plaintiff argues that Laura's case is analogous to her other sister's, Martha Manygoats, who was approved for relocation benefits without income documentation. (Doc. 24 at 2–3.) But Martha provided multiple Social Security earnings statements. (AR 62, 80–81, 90.) Her 1981 statement showed she had $3,770 in income, well beyond the $1,300 threshold. (AR 90.) Laura provides no such documentation. Her testimony therefore remains "totally unsupported by contemporaneous documentation," *Benally*, 2014 WL 523016, at *4, and to validate conjecture would allow for applicants to "be able to claim any amount of income to meet the head of household

standard no matter how fantastic." *Begay v. Off. of Navajo & Hopi Indian Relocation*, No. CV-16-08268-PCT-DJH, 2018 WL 11265153, at *4 (D. Ariz. Mar. 30, 2018), *aff'd*, 771 F. App'x 384 (9th Cir. 2019). The Court finds the IHO's requirement of documentation here to be in line with case law and 25 C.F.R. § 700.147(b), and therefore finds no error.

Moreover, Laura failed show any other evidence that she was a self-supporting head of household. Laura did not mention that she paid rent, nor did she pay for her own meals. (Doc. 18 at ¶ 7.) In fact, Laura resided with her parents and presumably relied on them for meals and housing. (*Id.*) *Benally*, 2014 WL 523016, at *3 (holding that where an individual lives with their parents and their food and shelter needs are provided for, they fail to meet the burden of showing they are head of household). Given this, Plaintiff fails to meet the burden of proving Laura was the self-supporting head of household prior to July 1986.

Plaintiff points to several cases where he argues the ONHIR reached opposite decisions. (Doc. 24 at 5–9.) While it is true that the ONHIR must follow its own precedent, this requires "that the agency appl[y] the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence." *Daw*, 2020 WL 5632121, at *4. The Court finds that the IHO's decision was not arbitrary and capricious and was supported by substantial evidence.

### D. Trustee Obligations

Finally, Plaintiff contends that the ONHIR's adverse decision violated the government's federal trust responsibilities and the duty of good faith. (Doc. 17 at 15–17, Doc. 24 at 13–15.) Plaintiff does not allege a specific federal trust violation is present, and consequently fails to apply any legal authority to the specificities of the present case. (Doc. 23 at 13–15.) Nevertheless, the Court finds that the ONHIR did not breach its "affirmative duty to manage and distribute the funds appropriated pursuant to the Settlement Act such that the displaced families receive[ ] the full benefits authorized for them." *Stago*, 562 F. Supp. 3d at 106 (quoting *Bedoni*, 878 F.2d at 1124) (internal quotations omitted). ONHIR

has a duty only to disburse benefits to those *authorized* to receive them under the Settlement Act. "Thus, whether ONHIR has a duty to disburse benefits to Plaintiffs flows from the IHO's decision, but ONHIR's duty to disburse benefits to eligible applicants does not dictate Plaintiffs' eligibility." *Id.*

### IV. CONCLUSION

Therefore,

**IT IS ORDERED denying** Plaintiff's Motion for Summary Judgment. (Doc. 17.)

**IT IS FURTHER ORDERED granting** Defendant's Cross Motion for Summary Judgment. (Doc. 19.)

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 19th day of July, 2022.

Michael T. Liburdi
United States District Judge